# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

GLYNN JONES,

          Plaintiff,

vs.

CARGILL, INC.,

          Defendant.

No. 05-CV-129-LRR

**ORDER**

_____

## *I. INTRODUCTION*

The matter before the court is Defendant Cargill, Inc.'s Renewed Motion in Limine ("Motion") (docket no. 31). Defendant seeks exclusion of ten categories of evidence from trial: (1) so-called "disparate impact" evidence; (2) evidence that Defendant is an affirmative action employer; (3) evidence of Defendant's hiring practices; (4) evidence about the merits of Plaintiff Glynn Jones's complaints; (5) "stray remarks" evidence; (6) evidence about the discipline of Eric Fisher; (7) evidence of retaliation for Plaintiff's pre-February of 2003 protected activity; (8) evidence of Dick Cook's complaint; (9) evidence of alleged "racial stereotyping"; and (10) punitive damages evidence.

## *II. BACKGROUND*

On July 26, 2005, Plaintiff filed a two-count Complaint against Defendant. In Count I, Plaintiff alleges race-based discrimination and retaliation, in violation of the Iowa Civil Rights Act of 1965, Iowa Code ch. 216 ("ICRA"). In Count II, Plaintiff alleges race-based discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981. On December 22, 2005, Defendant filed an Answer, in which it denies the substance of the Complaint.

On March 12, 2007, Defendant filed the Motion. On March 19, 2007, Plaintiff

filed a Resistance. On March 21, 2007, the court held a hearing ("Hearing") on the Motion. Attorneys Thomas Newkirk and Brooke Timmer represented Plaintiff. Attorney Mark Zaiger represented Defendant. The Motion is fully submitted, and thus the court turns to consider it.

### III. DISPARATE IMPACT EVIDENCE

In the Motion, Defendant asks the court to prohibit Plaintiff from introducing so-called "disparate impact" evidence at trial. Plaintiff seeks to introduce three categories of "disparate impact" evidence: (1) evidence that Defendant made its testing requirements more difficult for Plaintiff, because he is an African-American; (2) evidence that Plaintiff's supervisors and some of Defendant's other managers made such change in testing requirements without consulting Defendant's human resources or affirmative action officers; and (3) statements from such supervisors and managers that they knew that "tests can have an adverse impact on African-Americans."

At the Hearing, counsel for Defendant clarified that "the point" of this portion of its Motion is to exclude wide-ranging, generic evidence about how tests may affect African-Americans differently than other racial and ethnic groups. Defendant claims such evidence is irrelevant and should be excluded pursuant to Federal Rule of Evidence 402. In the alternative, Defendant argues that, even if such evidence is relevant, "its probative value is substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury, or by considerations of undue delay, [or] waste of time" and thus should be excluded pursuant to Rule 403.

Plaintiff resists this portion of the Motion. Plaintiff contends that all of his disparate impact evidence is "strong evidence of intent, design, plan, motive, as well as evidence of racial bias and retaliatory motion." Plaintiff does not cite any legal authority, however.

Because Plaintiff does not cite any legal authority in support of his Resistance, the court shall grant this portion of the Motion. *See* LR 7.1(e) (requiring citation to legal

2

authority). Plaintiff shall not present wide-ranging, generic evidence about how tests may affect African-Americans differently than other racial or ethnic groups.

Even if Plaintiff had complied with the Local Rules, however, the court would find that such testing evidence is not relevant and should be excluded pursuant to Rule 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevant evidence is generally admissible. Fed. R. Evid. 402. Irrelevant evidence is inadmissible. *Id*. Whether tests in general may disparately impact African-Americans or whether Defendant's supervisors and managers were aware of any such disparate impact is irrelevant to the issues in this case. Fed. R. Evid. 401.

Even if such generic testing evidence were somehow relevant to the issues in this case, the court finds that the probative value of such evidence would be substantially outweighed by considerations of undue delay, waste of time and confusion of the issues and should be excluded pursuant to Rule 403. Plaintiff may not speculate about the potential disparate effect of tests on African-Americans; to establish his thesis, Plaintiff would need to present a substantial amount of expert testimony.[1] The presentation of expert testimony on such an attenuated matter would have minimal probative value but would waste time, unduly delay trial and confuse the jury. Fed. R. Evid. 403.

That said, the court shall permit Plaintiff to present evidence that (1) Defendant made its testing requirements more difficult for Plaintiff, because he is an African-American and (2) Plaintiff's supervisors and some of Defendant's other managers made the change in testing requirements without any consultation from Defendant's human resources department or affirmative action officers. Defendant does not appear to request

---

[1] Plaintiff did not disclose any such experts to Defendant during the course of discovery, which is now completed.

that such evidence be excluded.  Further, these two categories of evidence tend to make it more likely that an unlawful discriminatory or retaliatory motive played a part in Plaintiff's discharge.  Fed. R. Evid. 401.

Accordingly, the court shall grant this portion of the Motion.

### IV.  DEFENDANT'S AFFIRMATIVE ACTION STATUS

At trial, Plaintiff intends to present evidence that Defendant has a written affirmative action policy, but its employees at the Cedar Rapids Plant ("Plant") do not follow it.  Plaintiff claims that this evidence is relevant, because it makes it more likely that an unlawful discriminatory or retaliatory motive played a part in Plaintiff's discharge. Plaintiff intends to present evidence that he complained about Defendant's hiring and retention practices before he was fired.

Defendant seeks to exclude all evidence of its status as an affirmative action employer as irrelevant pursuant to Rule 402.  In the alternative, Defendant contends that the probative value of such evidence is substantially outweighed by its prejudicial effect and should be excluded pursuant to Rule 403.

Plaintiff contends that Defendant's failure to comply with its own affirmative action policy is relevant because such a failure makes it more likely that discrimination played a part in Defendant's decision to fire Plaintiff.  Plaintiff also points out that his complaints about Defendant's hiring and retention practices form part of the basis for his retaliation claim.

"[E]vidence that an employer has failed to live up to an affirmative-action plan is relevant to the question of discriminatory intent . . . ."  *Craik v. Minn. State Univ. Bd.*, 731 F.2d 465, 472 (8th Cir. 1984) (reversing district court's finding of non-discrimination because district court ignored evidence that defendant failed to follow its own affirmative action policy); *Taylor v. Teletype Corp.*, 648 F.2d 1129, 1135 n.14 (8th Cir. 1981) ("Evidence, such as Teletype's failure to live up to its affirmative action program and its

4

failure to support its affirmative action director, is also relevant to discerning the Company's attitude regarding race."). As one court observed in another disparate treatment racial discrimination case:

> Defendant's failure to comply with its own equal employment obligations cannot form a basis for Title VII liability. However, noncompliance can serve as evidence of defendant's intent. Defendant's failure to comply with its own affirmative action program supports an inference of discriminatory intent.

*Milburn v. West*, 854 F. Supp. 1, 13 (D.D.C. 1994) (citations omitted), *aff'd sub nom. Walker v. West*, No. 94-5228, 1995 WL 11793 (D.C. Cir. Feb. 7, 1995); *see also Gonzales v. Police Dep't, City of San Jose, Cal.*, 901 F.2d 758, 761 (9th Cir. 1990) ("[E]vidence that the employer violated its own affirmative action plan may be relevant to the question of discriminatory intent."); *Yatvin v. Madison Metro. Sch. Dist.*, 840 F.2d 412, 415 (7th Cir. 1988) (explaining that "just as the establishment of a bona fide affirmative action plan might help rebut a claim of sex discrimination, so the violation of such a plan might help support such a claim").[2]

Accordingly, the court shall deny this portion of the Motion.

## V. HIRING PRACTICES

Defendant asks the court to exclude evidence of its hiring practices, including its "phone screening method" and its "policy of granting automatic first interviews to referrals." Defendant asks the court to exclude such evidence as irrelevant pursuant to Rule 402.

Plaintiff resists this portion of the Motion. Plaintiff claims he was fired, in part,

---

[2] Defendant's citation to *Hagan v. Warner/Elektra/Atlantic Corp.*, 92 Fed. Appx. 264 (6th Cir. 2004) is unavailing. In *Hagan*, the Sixth Circuit Court of Appeals held that the existence of an affirmative action policy is not *direct* evidence of reverse-race discrimination, "unless the employer acted discriminatorily pursuant to the plan." 92 Fed. Appx. at 266-67.

because he complained about Defendant's hiring practices, which he contends are discriminatory. Plaintiff argues that evidence of such hiring policies is relevant, because it is evidence of Defendant's discriminatory intent. In other words, if Defendant's hiring practices are discriminatory, it is more likely that racial discrimination played a part in Plaintiff's termination.

Most of the court's discussion of disparate impact and affirmative action evidence applies with equal force here. Accordingly, the court shall deny this portion of the Motion. Plaintiff may present evidence of Defendant's allegedly discriminatory hiring practices to explain the genesis of his retaliation claims and to prove intent for his discrimination claims.

## VI. MERITS OF PLAINTIFF'S COMPLAINTS

Defendant asks the court to exclude all evidence regarding the merits of Plaintiff's complaints in the workplace. During his employment, Plaintiff complained about a variety of matters, including allegedly racially discriminatory testing standards, facial hair requirements, training program, hiring and retention practices and slurs made by co-workers in the workplace. Defendant contends that only the mere fact that Plaintiff complained is relevant at trial, not whether any of his complaints had merit. Therefore, Defendant seeks exclusion of evidence about the merits of Plaintiff's complaints pursuant to Rule 402. In the alternative, Defendant seeks exclusion of any such evidence pursuant to Rule 403, because it "would inevitably lead to jury confusion and unfair prejudice." In his Resistance, Plaintiff generally states that "the merits of [his] complaints are relevant to motive" and he "must be allowed to paint the whole picture for the jury."

Plaintiff's merits-of-complaints evidence includes evidence of Defendant's allegedly discriminatory hiring, retention and testing practices, which the court has variously ruled admissible in Parts III, IV and V of this Order. To the extent the instant portion of Defendant's Motion includes a broader set of evidence, such evidence is not materially

6

different than the admissible evidence.  Plaintiff offers all merits-of-complaints evidence to explain the genesis of his retaliation claims and to prove intent for his discrimination claims.

Accordingly, the court shall deny this portion of the Motion.  Plaintiff may present merits-of-complaints evidence to explain the genesis of his retaliation claims and to prove intent for his discrimination claims.

## VII.  RACIST LANGUAGE

On February 15, 2002, one of Defendant's employees, Jerry Pisney, allegedly used racist language in Plaintiff's presence at work.  Pisney allegedly stated:

> [T]here's got to be an easier way to make a living.  Maybe I should rob a bank or something.  With my bad luck, I would be caught and thrown into a jail with a big guy named Bubba.  Yeah that nigga would have me bent over and sticking it to me.

On February 20, 2002, Plaintiff complained about Pisney's statement to several of his supervisors, as well as a human resources official at the Plant.  On March 6, 2002, Facility Manager Michael Vlasak gave Pisney a written "verbal warning" that "[a]ny future incidents such as this will result in further disciplinary action."  A written "verbal warning" is one of Defendant's lowest levels of discipline.

On May 17, 2002, Vlasak issued a similar written "verbal warning" to another employee, Mark Vozenilek.  Vozenilek referred to Oprah Winfrey as a "nigger bitch" in front of another African-American employee, Dick Cook.

At the end of January of 2003, Jim Maxson, one of Defendant's employees, referred to Plaintiff as "J.R." in Plaintiff's presence.  J.R. was a retired African-American employee.  When Plaintiff protested, Maxson stated "all you guys look alike."  Plaintiff complained to Operations Manager John Bro.  Bro told Plaintiff to "stop complaining because someone [is] going to get fired."

Plaintiff intends to introduce evidence of the Pisney, Vozenilek and Maxson

7

statements at trial.  Plaintiff also intends to present evidence of the reaction of Defendant's management to such statements, including the level of discipline leveled against the three employees.  Plaintiff claims that all of this evidence shows that (1) Plaintiff's complaints about racist language in the workplace had merit; (2) Defendant treated Caucasian employees more leniently than African-American employees; and (3) Defendant's management failed to react appropriately.  Plaintiff claims that such evidence tells the story for his retaliation claims and are relevant to show intent for his discrimination claims.

In the Motion, Defendant claims that Plaintiff's racist-language evidence is mere "stray remarks" evidence.  Defendant asks the court to exclude such evidence as irrelevant pursuant to Rule 402.  In the alternative, Defendant urges the court to exclude the evidence pursuant to Rule 403, because its probative value is substantially outweighed by the danger of unfair prejudice.[3]

The Eighth Circuit Court of Appeals has "carefully distinguished between comments which demonstrate a discriminatory animus in the decisional process . . . from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process."  *Mohr v. Dustrol, Inc.*, 306 F.3d 636, 640-41 (8th Cir. 2002) (citation and internal quotation omitted).  It is undisputed that Pisney, Vozinelek and Maxson were all nondecisionmakers.  Therefore, their statements are not *direct* evidence of discrimination on the part of Defendant.  *Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006).

"Although . . . stray remarks, standing alone, may not give rise to an inference of discrimination, such remarks are not irrelevant."  *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922 (8th Cir. 2000).  As the Eighth Circuit Court of Appeals has explained in

---

[3] Defendant also claims, without elaboration, that "[t]he stray remarks should also be excluded as hearsay" pursuant Rules 801, 802, 803 and 804.  Because Defendant does not explain, elaborate or brief this argument, the court declines to decide this issue.

an age discrimination case:

> [The defendant] argues that stray remarks of nondecisionmakers . . . are not sufficient to raise an inference of age discrimination. We agree that such comments, standing alone, would not raise an inference of discrimination. It is well-settled that stray remarks by nondecisionmakers, or remarks by decisionmakers that are unrelated to the decisional process, do not suffice to show that discrimination was a motivating factor in an employment decision . . . . In a pretext case, however, such comments are surely the kind of fact which could cause a reasonable trier of fact to raise an eyebrow, thus providing additional threads of evidence that are relevant to the jury. [A nondecionmaker's] statement that it was difficult to place "the old farts" in the new organization and [another nondecisionmaker's] memo, which directly stated a company preference for younger talented individuals, constituted proper circumstantial evidence for the jury to consider in combination with all the other evidence.

*Bevan v. Honeywell, Inc.*, 118 F.3d 603, 610 (8th Cir. 1997) (citations and internal quotation marks omitted). Here, Plaintiff does not offer the racist statements as direct evidence of discrimination; Plaintiff offers such evidence, in combination with evidence that Defendant did not adequately discipline the nondecisionmakers, to show that discrimination played a part in Plaintiff's termination. Although evidence of racist language in the workplace by nondecisionmakers is "not persuasive evidence of motive" of illegal discrimination on the part of a corporate defendant, *Hitt v. Harsco Corp.*, 356 F.3d 920, 925 (8th Cir. 2004), the court finds that it is relevant and, in this case, its probative value is not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 401; Fed. R. Evid. 402; Fed. R. Evid. 403. If Plaintiff can show that Defendant tolerated, minimized or failed to adequately discipline employees who used racist language in the workplace, then it is more likely that a discriminatory motive played a part in Plaintiff's termination. Accordingly, the court shall deny this portion of Defendant's

9

Motion.

The court's decision to admit the racist-language evidence causes the court to circumscribe one of its prior rulings. In Part VI of the court's March 19, 2007 Order (docket no. 34), the court excluded a statement pursuant to Rule 402 and Rule 403. The court excluded Plaintiff's statement that "[a]ll Canadians should be taken out and shot," which he allegedly made in the presence of a Canadian janitor. The court reasoned that Plaintiff's apparent animosity towards our northern neighbors was not relevant to any of the issues at trial and there was some danger that the jury might punish Defendant for such animosity. The court now concludes that, if Plaintiff presents evidence of Defendant's reaction to the racist statements of its employees, Defendant should be afforded the opportunity to rebut any inference of discrimination through proof that Plaintiff made the Canadians comment but was not disciplined. In other words, if Plaintiff pursues this line of inquiry, Plaintiff's own statement about Canadians and Defendant's reaction thereto would be relevant to dispel an inference of discrimination. Fed. R. Evid. 401; Fed. R. Evid. 402. Although there is some danger that the jury would punish Plaintiff because he harbors animosity towards Canadians, the risk of danger is not great. Once the statement about Canadians becomes relevant, its probative value is not substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; s*ee also McMillian v. Mass. Soc. for the Prevention of Cruelty to Animals*, 140 F.3d 288, 301 (1st Cir. 1998) (cautioning district courts not to be "one-sided" in their decisions to admit or exclude stray-remarks evidence).[4]

## VIII.  ERIC FISHER

On October 29, 2003, Kelly Schmitt, Plaintiff's supervisor, issued employee Eric

---

[4] Consistent with the court's prior Order (docket no. 34), Defendant shall not introduce any evidence of Plaintiff's statement about Canadians unless and until Plaintiff introduces racist-language evidence.

Fisher a written "verbal warning" for falsifying a safety permit. Defendant argues that Fisher was not similarly situated to Plaintiff and, therefore, evidence of Defendant's discipline of him is irrelevant. Defendant asks the court to exclude all evidence of the Fisher matter at trial pursuant to Rule 402.

In the court's March 6, 2007 Order (docket no. 27) denying Defendant's Motion for Summary Judgment, the court held that a jury could find that Fisher and Plaintiff were similarly situated employees. The court stands by the Order.[5] Evidence that Defendant treated Plaintiff less favorably than Fisher may raise an inference of discrimination. *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998) (citation omitted).

Accordingly, the court shall deny this portion of the Motion.

### IX. PRE-FEBRUARY OF 2003 PROTECTED ACTIVITY

In its Motion, Defendant seeks to exclude

> evidence or argument that [Defendant] retaliated against [Plaintiff] for engaging in activities that were remote in time from his discipline/discharge. Specifically, Plaintiff may attempt to argue that he was retaliated against for protected activity prior to February [of] 2003. Such evidence and argument should be excluded as irrelevant because . . . the temporal proximity between protected activity and alleged retaliation must be "very close."

Motion at 7 (citing in part *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). Plaintiff generally resists this portion of the Motion.

The court shall grant this part of the Motion, insofar as Defendant seeks to preclude Plaintiff from arguing to the jury that he can prove a retaliation claim for a pre-February of 2003 adverse employment action. It is not disputed that Plaintiff did not exhaust his administrative remedies for any adverse employment actions other than his firing in

---

[5] At the Hearing, counsel for Defendant conceded that the court effectively ruled on the admissibility of the Fisher matter in the Order.

January of 2004.  Accordingly, he does not have a retaliation claim for any pre-February of 2003 adverse employment actions.  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made." (citing 42 U.S.C. § 2000e-5(e)(1))).

The court shall deny this part of the Motion, insofar as Defendant seeks to preclude Plaintiff from presenting evidence of any pre-February of 2003 retaliation.  Plaintiff shall be permitted to put his termination in context.  The events that led up to Plaintiff's firing, from Plaintiff's complaints about training in February of 2002 to his suspension without pay in January of 2004, are relevant to show an unlawful discriminatory or retaliatory motive in his firing and thus are admissible.  Fed. R. Evid. 401; Fed. R. Evid. 402.

Accordingly, the court shall grant in part and deny in part this portion of the Motion.

## X.  DICK COOK

As indicated, Vozenilek referred to Oprah Winfrey as a "nigger bitch" in front of another African-American employee, Dick Cook.  Cook complained about Vozenilek's comment, but apparently did not immediately receive a response from Defendant. Defendant asks the court to exclude Cook's complaint and Defendant's response. Defendant contends the complaint is irrelevant and would involve "the trial of collateral issues."  Defendant seeks exclusion of the evidence pursuant to Rule 402 and Rule 403. Plaintiff generally resists this portion of the Motion.

The court held in Part VII of this Order that evidence of Cook's comment and Defendant's response thereto is admissible.  Accordingly, the court shall deny this portion of the Motion.

## XI.  RACIAL STEREOTYPING

Plaintiff intends to ask various witnesses, including Plaintiff's former coworkers and

supervisors, whether they are "aware of the existence of racial stereotypes." The racial stereotypes include assumptions that "blacks always play the race card, . . . use drugs or are lazy . . . ." Plaintiff claims that the witnesses's answers, as well as their "reactions" are relevant to show the state of mind of Defendant's management when it fired Plaintiff. Plaintiff contends generally that "deep within males and females there exist sexually [sic] based reasons to the personal characteristics of one of the sex [sic] . . . ." In his Resistance, Plaintiff points out that "[t]he Supreme Court has long recognized that unlawful discrimination can stem from *stereotypes and other types of cognitive biases*, as well as from conscious animus." (emphasis in original) (citing, in part, *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 59 (1st Cir. 1999)).

Defendant contends that Plaintiff's evidence of racial stereotyping is irrelevant and hearsay-within-hearsay. Defendant opines that the probative value of such evidence is substantially outweighed by the dangers of unfair prejudice and undue delay. Defendant also points out that evidence of racial stereotyping would require expert testimony, and Plaintiff has not disclosed any expert witnesses on such issue. Defendant asks the court to exclude such evidence pursuant to Rule 402 and Rule 403.[6]

The court holds that evidence of racial stereotyping in general would require expert testimony, which Plaintiff has not disclosed to Defendant. In any event, the court finds that the probative value of any racial stereotyping evidence is substantially outweighed by considerations of undue delay and confusion of the issues. There is little evidence in the record that any of the decisionmakers in this case believe in any racial stereotypes. Therefore, the court shall exclude any general evidence relating to racial stereotypes of African-Americans that members of other racial or ethnic groups might believe. Fed. R.

---

[6] Defendant also seeks exclusion of racial-stereotypes evidence pursuant to Rule 801, Rule 802 and Rule 805. Because Defendant does not explain, elaborate or brief this argument, the court declines to decide this issue.

13

Evid. 402; Fed. R. Evid. 403.

That said, the court shall permit Plaintiff to conduct a limited inquiry on the issue of racial stereotypes. Plaintiff may ask those employees who were decisionmakers in Plaintiff's termination whether they believe in racial stereotypes of African-Americans. Clearly, if a decisionmaker believes in racial stereotypes that "blacks always play the race card, . . . use drugs or are lazy . . . ," it is more likely that race played a part in Defendant's decision to terminate Plaintiff. Fed. R. Evid. 401; Fed. R. Evid. 402.

Accordingly, the court shall grant in part and deny in part this portion of the Motion.

## XII. PUNITIVE DAMAGES

Defendant seeks to exclude any evidence or argument relating to punitive damages, including evidence of its wealth, if and until the jury has returned a verdict for Plaintiff on liability and compensatory damages. Plaintiff does not resist bifurcation of the punitive damages phase of the trial.

"The decision . . . to isolate the punitive damages phase of the trial is within the sound discretion of the trial court." *Thorne v. Welk Inv., Inc.*, 197 F.3d 1205, 1213-14 (8th Cir. 1999); *see* Fed. R. Civ. P. 42(b) (providing district court discretion to bifurcate). Bifurcation of trial into separate phases to consider punitive damages apart from liability avoids the potential that evidence pertinent to punitive damages, such as the financial status of Defendant, will improperly prejudice the jury's determination of liability. *Parsons v. First Investors Corp.*, 122 F.3d 525, 529 (8th Cir.1997). The court finds that bifurcation is appropriate in this case. *Cf. Niver v. Travelers Indem. Co. of Ill.*, 430 F. Supp. 2d 852, 872-73 (N.D. Iowa 2006) (declining to bifurcate where convenience, expedition and economy of resources were all served by having a single trial of all the issues).

Accordingly, the court shall grant this portion of the Motion.

14

## XIII. DISPOSITION

The court shall grant in part and deny in part the Motion. The court reserves the right, however, to limit the quantity of admissible evidence discussed in Parts III, IV, V, VI and XI pursuant to Rule 403. Needless presentation of cumulative evidence will not be permitted at trial.

**IT IS THEREFORE ORDERED:**

(1)     Plaintiff's Motion (docket no. 31) is **GRANTED IN PART AND DENIED IN PART** ; and

(2)     The parties must not directly or indirectly refer to or elicit answers from witnesses on the prohibited subjects. Each party is charged with the responsibility of cautioning its witnesses as to the substance of this Order.

**IT IS SO ORDERED.**

**DATED** this 6th day of April, 2007.


LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

15